UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,                  :

        v.                                                        :

ERIC MANUEL,                                             :

                         Defendant.           :
------------------------------------------------------------X

14 Cr. 497 (PAC)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-20-14

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant Eric Manuel moves to suppress a firearm seized from him on September 20, 2013 by New York City Police officers. On October 8, 2014, the Court held a suppression hearing. The Court concludes the police officers had reasonable suspicion to stop the livery cab in which defendant was a passenger. During the stop the officers properly ascertained the defendant possessed a gun, which they seized. Mr. Manuel's motion to suppress the firearm is DENIED.

## SUMMARY OF FACTS[1]

At approximately 3:30 a.m. on September 20, 2013, Officers Ortiz and Miller were driving northbound on Concourse Village East in an unmarked vehicle. (Tr. 9:15-25; 74:11-14.) The officers stopped at a red light at the intersection of 158th Street and observed a livery cab on the other side of the intersection facing southbound. (Tr. 8:22-9:25; 64:25-65:2.) The cab was moving "very slowly." (Tr. 8:22-9:4.) Officer Miller observed an individual, later identified as Mr. Manuel, sitting in the backseat of the cab, taking "periodic sips" out of a disposable cup, and "looking over into the middle console" of the cab. (Tr. 65:17-66:1; 73:20-25.) Officer Miller

---

[1] The facts are taken from the testimony of livery cab driver Victor Nunez and Police Officers Anderson Ortiz and Eric Miller at the October 8, 2014 suppression hearing. Mr. Manuel did not testify, although he did submit an affidavit, dated September 15, 2014.

1

indicated to Officer Ortiz that he believed the passenger of the cab was "drinking" and that he "wanted to get a closer look." (Tr. 62:18-19.) In order to make this observation, the officers drove through the red light and crossed the intersection, which was illuminated by a streetlight. (65:3-10; 74:19-21.) They stopped, adjacent to the livery cab, between four and ten feet away, "for a couple of seconds." (Tr. 10:2-6; 23:1-3; 65:3-9.) Officer Ortiz observed that Mr. Manuel was "slouched over forward" with "his head down" in a manner that appeared consistent with intoxication. (Tr. 10:12-11:4.) The officers also saw Mr. Manuel "slowly tak[e] a sip" from what appeared to be a clear or white disposable cup. (Tr. 10:12-11:4; 77:23-78:6.)

Besides the officers, there was an eyewitness, Victor Nunez, who was driving Mr. Manuel; he confirmed much of the officers' testimony. Mr. Nunez testified that Mr. Manuel got into the livery cab at approximately 3:30 a.m. at "Cortlandt and 161[st Street]," and asked to go to Lexington and 101st Street. (Tr. 51:15-16.) Mr. Nunez stated that while Mr. Manuel was in the cab, Mr. Manuel was drinking a "white" beverage that "smelled like alcohol" out of a plastic cup. (Tr. 51:22-52:5.) Mr. Nunez also testified that while Mr. Manuel was in the livery cab, he was drinking the beverage "slowly." (Tr. 52:6-52:7.) On cross examination, Mr. Nunez stated that the beverage "was white and it was alcoholic." (Tr. 57:25-58:1.)

Officers Miller and Ortiz made a U-turn on Concourse Village East and, based on their observations of Mr. Manuel, pulled over the livery cab. (Tr. 11:19-21.) Officer Ortiz approached the cab on the passenger side, while Officer Miller approached on the driver's side. (Tr. 12:11-13.) As he approached the cab, Officer Ortiz used his flashlight to inspect the backseat. He observed Mr. Manuel sitting on the right-hand side of the backseat with his body angled and leaning to the left, holding a cup "with both hands." (Tr. 13:3-25.) Officer Ortiz then observed what he believed to be the handle of a firearm sticking out of Mr. Manuel's right jacket

2

pocket. (Tr. 14:7-11; 44:3-4.) He opened the cab door and asked Mr. Manuel to exit the vehicle. (Tr. 7:7-23.)

As Mr. Manuel stepped out of the livery cab, he "stumbled forward towards" Officer Ortiz. (Tr. 15:22-25.) Officer Ortiz "caught [Mr. Manuel's] body," and, in doing so, felt with his left hand an object that he immediately recognized as a firearm in Mr. Manuel's pocket. (*Id.*) Officer Ortiz removed the firearm from Mr. Manuel's pocket, an action corroborated by Mr. Nunez's testimony that he observed one of the officers "put his hand into [Mr. Manuel's] pocket and pull[] out the gun." (Tr. 53:12-16.)

After Officer Ortiz recovered the firearm, he yelled an NYPD code word to Officer Miller to indicate that Mr. Manuel had a firearm. (Tr. 16:1-18.) The officers then arrested Mr. Manuel.

## DISCUSSION

### I. Reasonable Suspicion for Stop

An officer may conduct an investigative stop "if the officer has a reasonable suspicion that criminal activity may be afoot." *United States v. Lopez*, 553 Fed. Appx. 10, 11 (2d Cir. 2014) (citation omitted). In determining whether the stop was reasonable, courts evaluate "the totality of the circumstances" through "the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000) (citation omitted). Reasonable suspicion is an objective standard, and cannot be based upon an "inchoate suspicion or mere hunch." *Id.*

An officer may conduct a traffic stop of a vehicle based on "a reasonable suspicion of a traffic violation." *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009). Traffic violations

3

include "[t]he drinking of alcoholic beverages, or the possession of an open container containing an alcoholic beverage" in vehicles located on public roads. N.Y. Veh. & Traf. Law § 1227.

An officer may have reasonable suspicion that an individual is drinking an alcoholic beverage, even if the container does not clearly label the beverage as alcohol. *See United States v. Lopez*, 321 Fed. Appx. 65, 67 (2d Cir. 2009) (reasonable suspicion existed where officers saw defendant drinking outside a bar at 4:00 a.m., the liquid in defendant's cup appeared to be beer, defendant appeared unsteady on his feet, and officers smelled alcohol on defendant's breath); *United States v. Ortiz*, 2007 U.S. Dist. LEXIS 21267, at *15-16 (W.D.N.Y. Mar. 26, 2007) (probable cause existed where officers saw defendant holding a brown bag containing a clear glass bottle). The totality of the circumstances may also include the time at which the stop occurs. *See United States v. McPhatter*, 2004 U.S. Dist. LEXIS 2754, at *6 (E.D.N.Y. Feb. 24, 2004) (reasonable suspicion existed where officer observed defendant drinking from green glass bottle in brown paper bag at approximately 1:00 a.m. in a "high crime" area).

Based on these legal standards, the Court concludes that there was reasonable suspicion to stop the livery cab. The officers had an opportunity to observe Mr. Manuel's actions. While the officers' car was stopped at the red light at Concourse Village East and 158th Street, Officer Miller observed Mr. Manuel sipping from a plastic cup what the officer believed to be an alcoholic beverage. Rather than immediately acting, however, the officers drove across the intersection and pulled up adjacent to the livery cab for a closer view. They observed Mr. Manuel for a "couple of seconds" from a distance of four to ten feet. (Tr. 10:2-6; 23:1-3; 65:3-9.) In addition, although it was approximately 3:30 a.m. and therefore dark outside, the intersection was lit by a streetlight. (Tr. 74:19-21.)

4

The officers observed Mr. Manuel drinking from a disposable cup, not from a plastic soda bottle, water bottle, or reusable travel container, all of which are commonly associated with non-alcoholic beverages. (Tr. 10:12-11:4.) Mr. Manuel was also sipping the beverage "slowly," providing a further indication that the cup contained an alcoholic, rather than non-alcoholic, beverage. (Tr. 10:12-15.)

Moreover, Mr. Manuel was "slouched" forward in the backseat of the cab in a manner that Officer Ortiz perceived to be indicative of intoxication. (Tr. 10:24-11:1.) While appearing intoxicated does not, without more, constitute reasonable suspicion to justify an investigatory stop, certainly Mr. Manuel's apparent intoxication is an important ingredient in the totality of the circumstances supporting reasonable suspicion that Mr. Manuel was drinking an alcoholic beverage. The same may be said of the plastic cup, containing a clear liquid, which was being "slowly" imbibed or sipped. The fact that the stop occurred at 3:30 a.m., when factored into the totality of the circumstances, supports a reasonable suspicion that Mr. Manuel was consuming alcohol, rather than a non-alcoholic beverage. *See McPhatter*, 2004 U.S. Dist. LEXIS 2754, at \*6.

Finally, Mr. Nunez's eyewitness testimony corroborated the officers' testimony in critical respects. Mr. Nunez testified that he too had observed Mr. Manuel in the livery cab slowly sipping a beverage that smelled like alcohol out of a plastic cup; "it was white and it was alcoholic." (Tr. 57:25-58:1.)

Based on the totality of the circumstances, a "reasonable and cautious police officer" could conclude that Mr. Manuel was drinking an alcoholic beverage in a vehicle in violation of New York Vehicle and Traffic Law.

## II. Reasonable Suspicion for Frisk

During a lawful investigatory stop, an officer "may conduct a patdown search for concealed weapons" if the officer "has reason to believe that the detained individual is armed and dangerous." *United States v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008).

Officer Ortiz credibly testified that when he approached the cab on foot, he used his flashlight to inspect the backseat. (Tr. 13:3-25.) Officer Ortiz observed Mr. Manuel sitting on the passenger or right-hand side of the backseat, with his body angled and leaning to the left, and saw what he believed to be the handle of a firearm sticking out of Mr. Manuel's right jacket pocket.[2] (Tr. 13:3-25; 14:7-11; 44:3-4.) Mr. Manuel contends that "the firearm was concealed and there was no way that the police or anybody else could have seen it" (Manuel Aff. ¶ 7), but Mr. Manuel was leaning to the left, a posture which tends to elevate and expose the right side of the body. As Officer Ortiz approached the right rear door of the cab, therefore, he would have had an unobstructed view of an object protruding from Mr. Manuel's right-hand jacket pocket.

Moreover, Officer Ortiz did not immediately frisk Mr. Manuel upon observing what he believed to be a firearm. Officer Ortiz asked Mr. Manuel to exit the cab, and when Mr. Manuel stumbled towards him, Officer Ortiz "caught his body." (Tr. 15:22-25.) Since Mr. Manuel was facing Officer Ortiz, Officer Ortiz's left hand would have been opposite to Mr. Manuel's right-hand pocket, and Officer Ortiz indeed testified that he felt the object in Mr. Manuel's pocket with his "left hand." (*Id.*) Only after Officer Ortiz recognized the object as a firearm did he remove it from Mr. Manuel's pocket. (Tr. 15:22-16:5.) Officer Ortiz's testimony is also corroborated by that of Mr. Nunez, who testified that he observed an officer "put his hand into

---

[2] Defense counsel urges the Court to discredit Officer Ortiz's testimony because Officer Ortiz failed to immediately shout "White Castle" to alert Officer Miller that Ortiz had observed "what could be a handle of a firearm." (Tr. 13:6-8.) There is no requirement that there must be an immediate outcry, especially in the circumstances of this particular frisk. In the event, the alert was given seconds later.

6

[Mr. Manuel's] pocket and pull[] out the gun." (Tr. 53:12-16.) Accordingly, the search was appropriate and the recovery of the firearm from Mr. Manuel was permissible.

## CONCLUSION

For the foregoing reasons, Mr. Manuel's motion to suppress is DENIED.

The Court excludes time between the date of this opinion and a conference scheduled for Wednesday, December 10, 2014, at 11:45 a.m., in Courtroom 14-C, under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). Allowing the parties time to consider how to proceed in light of this opinion is in the interests of justice, and outweighs the interests of the public and the defendant in a speedy trial.

Dated: New York, New York
       November 20, 2014

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge